BERNARDINE GREGSON *vs.* BIG BEAR FOOD CORPORATION.

JAMES GREGSON *vs.* SAME.

MARCH 23, 1956 (as of JANUARY 17, 1956).

PRESENT: Flynn, C. J., Condon and O'Connell, JJ.

FLYNN, C. J. These two actions of the case for negligence were brought by a wife and her husband respectively to recover damages based upon personal injuries sustained by the wife from a fall allegedly caused by a foreign substance on the floor of the market owned and operated by the defendant corporation. After a trial in the superior court a jury rendered verdicts for Bernardine Gregson in the sum of $4,750 and for James Gregson in the sum of $500. Thereafter the trial justice denied the defendant's motion for a new trial in the wife's case and granted such a motion in the husband's case unless he remitted all of his verdict in excess of $124. Such remittitur was filed and the cases are before us on defendant's exceptions to the denial of its motions for an unconditional new trial in each case and to other rulings of the court during the trial.

The husband's case depends on defendant's liability to his wife and therefore we shall consider the evidence and rulings as if only the wife's case were here, our decision however applying to both cases. In view of our final conclusion as to the motions for a new trial, we shall not discuss the evidence in detail.

In general the testimony for plaintiff tended to show the following among other facts. On May 29, 1943 she was an invitee in the premises of the Big Bear Market located at 795 Westminster street in the city of Providence. The market had been operated for some time by the defendant corporation, which had never been legally dissolved. Prior to the accident a Miss Berman had been defendant's legal agent for service of process and no change in this respect had been made up to the time of trial.

According to plaintiff's testimony she had made certain purchases and was walking along an aisle toward the rear of the store. At a point between the candy and butter counters she slipped and fell to the floor. After her fall she observed a brownish substance resembling a cutting or peeling from potatoes and also the marks of her shoe where it had scraped along the floor. An employee came from behind the butter counter, picked up the substance, and hurried with it toward the rear of the store.

Previously she had observed another employee at the potato counter dropping potato cuttings and peelings into a basket. He then dumped them into an overfilled basket on a platform truck, which had been brought by another to collect the debris or refuse. This truck was pushed by defendant's employee up the aisle just ahead of plaintiff. Her son also testified that he saw some of the potato peelings or cuttings drop from the overloaded basket to the platform of the truck. There was no evidence of any substance on the floor before the truck had passed that point.

The medical evidence of plaintiff's doctor indicated that she had sprained her left ankle in a fall elsewhere on May 4, 1943, some three weeks before she fell in the market; that after the present accident there were abrasions and some swelling on the left knee; and that her injuries were diagnosed as a sprained left knee and ankle. Diathermy treatments and manipulations continued until October 15, 1943.

An orthopedist to whom plaintiff was referred by her doctor diagnosed her condition as traumatic arthritis of the left knee. However, he received a history from her showing that she fell in a store and reinjured the same left knee for which she already had been treating because of a previous fall in April 1943, and that no mention of injury to her left ankle was made to him.

A third doctor who, on defendant's request, examined plaintiff the day after her fall testified that he received from her a history which showed that she had been under the care of an "osteopathic" doctor for a previous injury to her left knee; that the knee was then swollen and only slightly tender; and that the fall of May 29 may have slightly aggravated her previous knee condition but not to any appreciable extent.

On the other hand the evidence for defendant tended to show that the defendant corporation had been petitioned into receivership in July 1940; that thereupon a new corporation, Wamsutta Realty Corporation, had been formed and had been operating the store before and at the time of the accident; and that therefore plaintiff had not established the allegation in her declaration that defendant was the owner and operator of the market at the time of the accident. There was also testimony that the platform trucks were not used in the store until after the accident; that there was no cutting and peeling of potatoes as alleged since people would not buy them; and that no employee had picked up and carried away the alleged foreign substance.

The defendant first presses the exception to the denial of its motion for a directed verdict. In support thereof it is claimed substantially that the uncontradicted evidence shows that defendant corporation was not operating the market on May 29, 1943; that the Wamsutta Realty Corporation had been operating it after defendant's receivership and at the time of the accident; that the final decree in the

receivership of defendant corporation was entered December 4, 1941 showing all of the debts had been paid and leaving nothing further to be distributed; and that no annual report of such corporation, as required by general laws 1938, chapter 116, article III, §78 (a), had been filed in the office of the secretary of state from March 1940 to the time of trial.

In our opinion this contention considers the evidence most favorably to defendant and fails to view it most favorably to plaintiff, which is required on such a motion. Moreover it is not entirely uncontradicted, as defendant contends. According to the transcript the defendant corporation had never been *legally* dissolved. The receivership was brought to protect and not to dissolve the corporation and the final decree did not make such a dissolution. The mere failure to file an annual report after March 1940 would not in itself forfeit defendant's charter or dissolve the corporation as of May 29, 1943.

That statute requires not only a failure to file for *four* years next preceding the first day of March, but also the filing by the secretary of state of a certified list of all such delinquent corporations after the first day of March in each even year and the mailing of a certain notice to each corporation. The undisputed evidence shows that as of the date of the accident none of these steps had been taken. Moreover a witness from the office of the secretary of state testified that according to the records the defendant corporation had not been terminated.

All that is known of the Wamsutta Realty Corporation is gained from the testimony of Mrs. Hood, its president and treasurer. As the former Miss Berman, she and her present husband were managing operators of the market under the defendant corporation before the receivership. Both remained in that location after the receivership; both continued to operate the market; and no change, because of the receivership, in operating conditions as they affected

the public appears in evidence. Whether Wamsutta Realty Corporation was a mere holding corporation for the leasing of the premises, and in any event whether it or defendant was *in fact* operating the market on May 29, 1943, were questions to be determined by the jury from the conflicting evidence.

The defendant also argues that there was no evidence showing it had constructive notice of the dangerous condition on its floor. If plaintiff were seeking recovery solely on the first count, as in the previous trial where a nonsuit was entered against her, we could agree with defendant's contention. But after the nonsuit, plaintiff filed a new declaration containing an added count based on alleged negligence of defendant's employee in connection with the transporting and disposing of potato cuttings so as to cause or permit the same to fall on the floor and constitute a hazard to the invitees. If the testimony for plaintiff is believed, the defendant then had notice of its agent's direct negligence in causing the alleged condition. In our judgment, therefore, the trial justice was correct in ruling that the evidence, when viewed most favorably to plaintiff, presented a question of material fact for determination by the jury. This exception is therefore overruled.

The defendant further contends that the trial justice erred in denying its motion for a new trial. It is argued that the decision shows he failed to exercise his independent judgment in passing on the evidence, the credibility of the witnesses, and the verdict as required on such a motion. The only part of such decision, dealing with liability, is at the beginning and reads as follows: "Well, Gentlemen, so far as this Court is concerned, both of you used practically the same arguments that you used on the motion for a non suit, as well as for the motion for a directed verdict and the Court gave his reason, at that time, and the same reasons apply, here, so far as that is concerned, but, of course, the question of damages, that is something which is new

and could not be discussed, at that time. On the question of damages — When this action was started — The accident took place in '43 and the injuries were shown. There was still some injury there and the Plaintiff testified that there was a prior injury and that there might have been a slight aggravation."

He then referred to the damages and stated: "They [the jury] heard the testimony and they deliberated, on that day, about five hours which is a considerable time for twelve people to deliberate on a case and they returned a verdict in the sum of $4,750. and I am inclined to allow that to stand. I don't think it is grossly excessive, so far as the wife is concerned."

If the decision of the trial justice has been properly transcribed, it appears that on this motion for a new trial he applied the same rule which he had previously used when deciding defendant's motion for a directed verdict. At that time he expressly recognized and applied the proper rule by viewing the evidence most favorably to the adverse party. *Greenstein* v. *Singer,* 80 R. I. 141, 146; *Downes* v. *United Electric Rys.,* 80 R. I. 382, 386; *Belanger* v. *Pouliot,* 82 R. I. 330, 334. However, his duty is entirely different when he is acting upon a motion for a new trial. He is then required to consider all the evidence independently of the jury's verdict and to pass upon the credibility of the witnesses and the weight of the evidence. *Nichols* v. *New England Tel. & Tel. Co.,* 57 R. I. 180; *Andrews* v. *Penna Charcoal Co.,* 55 R. I. 215.

There is nothing in the decision as written which indicates that in passing on the motion for a new trial the trial justice performed his duty in respect to the issue of liability. In the absence of language or reasoning which would indicate an application of the correct rule, the decision is deprived of its persuasive force. Accordingly we must review the transcript of evidence without such assistance to determine whether the verdict is against the great weight of the

evidence. *Monacelli* v. *Hall,* 71 R. I. 55. In that connection we also note that the instant decision concerning the plaintiff wife's damages indicates that the trial justice believed the verdict was excessive but not grossly so, and that he relied to an extent on the time taken by the jury to reach their conclusion rather than giving this court the benefit of his independent judgment on all the evidence. In our opinion the verdict is excessive, as he indicated, and in view of the apparent failure of the trial justice to apply the correct rule as to liability, we are of the opinion that justice will be better served if the cases are presented to another jury for a new trial on all the issues. In view of this conclusion we need not consider the other exceptions.

The defendant's exception in each case to the denial of its motion for a new trial is sustained, and each case is remitted to the superior court for a new trial.

*Edward F. McElroy,* for plaintiffs.

*Francis V. Reynolds, Richard P. McMahon,* for defendant.